IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| TRACY RAWLINGS,<br><br>              Plaintiff,<br><br>v.<br><br>GILT EDGE FLOUR MILLS, INC.,<br><br>              Defendant. | MEMORANDUM DECISION<br>AND ORDER<br><br>Case No. 1:07CV31DAK |

      This matter is before the court on Defendant's Motion to Disallow Attorneys' Fees. The parties have fully briefed the motion. Defendant specifically declined a hearing on the motion, and the court concludes that a hearing would not significantly aid in its determination of the motion. The court has fully considered the memoranda submitted by the parties as well as the facts and law relevant to the present motion. Accordingly, the court enters the following Memorandum Decision and Order.

## DISCUSSION

      Defendant argues that Plaintiff, who prevailed on his tort claim of wrongful termination in violation of public policy, is not entitled to an award of attorneys' fees under Utah law. "Utah adheres to the well-established rule that attorney fees generally cannot be recovered unless provided for by statute or by contract." *Canyon Country Store v. Bracey*, 781 P.2d 414, 419 (Utah 1989). Plaintiff asserts that his claim for attorneys' fees is not based on statute or contract

1

but an exception for wrongful termination cases created by the Utah Supreme Court in *Heslop v. Bank of Utah*, 839 P.2d 828 (Utah 1992).

In *Heslop,* the court determined that the plaintiff was entitled to consequential damages, including attorneys' fees, in his "employment suit." *Id.* at 841.  Also, in *Smith v. Grand Canyon Expeditions Co.*, 84 P.2d 1154, 1162 (Utah 2003), the Utah Supreme Court included a parenthetical stating that *Heslop* created an exception allowing attorney fees in "wrongful termination cases."  The use of broadly phrased language, such as "employment suit" in *Heslop* and "wrongful termination cases" in *Smith*, has led to the dispute between the parties in this case as to which employment causes of action allow an award of attorneys' fees.

It is clear that the plaintiff in *Heslop* asserted both tort and contract causes of action against his former employer for wrongful termination in violation of public policy.  *Id.* at 836. The trial court dismissed the tort public policy claim and allowed the contract public policy claim to go to the jury.  After the case went to trial, but before the case reached the Utah Supreme Court, the supreme court declared that the cause of action for wrongful termination in violation of public policy sounded in tort, not contract.  *Peterson v. Browning Co.*, 832 P.2d 1280, 1284 (Utah 1992) (explaining that "employer's obligation to refrain from discharging an employee . . . does not depend upon any express or implied promise arising from the employment contract" and "the employer's liability is based on 'violation of a legal duty independently imposed as a result of what the defendant undertook to do with relation to the [employee's] interests.'" (citation omitted)).  Therefore, the *Heslop* court reversed the trial court's dismissal of the plaintiff's public policy tort claim.  *Id.* at 838.

While the bulk of the analysis in *Heslop* dealt with the plaintiff's public policy claims,

2

several other sections of the opinion dealt with other claims.  For example, the court affirmed the trial court's dismissal of the plaintiff's claim for breach of the implied covenant of good faith and fair dealing, *id.* at 840, and the court found that the "implied contract alleged by [the plaintiff] did not violate the statute of frauds," *id.* at 836.   Therefore, although the *Heslop* court never specifically identified a list of causes of action asserted by the plaintiff in that case, it is clear from its discussion of the issues on appeal that the *Heslop* plaintiff asserted, at least, tort and contract public policy claims, a breach of implied employment contract claim, and a breach of the implied covenant of good faith and fair dealing claim.

The *Heslop* court also addressed on appeal whether an instruction allowing consequential damages, including attorneys' fees, should have been given to the jury.  *Id.* at 840-41.  The court's conclusion that a consequential damages instruction should have been given to the jury is the source of the debate in the present case.  The language used in *Heslop* is at times broad enough to appear that attorneys' fees may also be available for public policy claims.  This court, however, can only conclude that the *Heslop* court's determination with respect to the consequential damages and attorneys' fees instruction was meant to apply to the plaintiff's implied employment contract claim, which was referenced in the court's statute of frauds discussion and not the plaintiff's public policy tort claim.

Significantly, the *Heslop* court's discussion regarding the availability of attorneys' fees also indicates that the basis for such damages arises from an implied-in-fact employment contract.  The *Heslop* court specifically noted that *Berube v. Fashion Centre Ltd.* held that "plaintiffs who prevail in employment cases may recover damages for general and consequential injuries resulting from the *breach of an employment contract*."  *Id.* at 840.  The court stated that

"*Berube* envisioned a broad range of recoverable damages in an *implied-in-fact contract* of employment, including both general and consequential damages." *Id.* (emphasis added). The court also noted that *Berube* recognized that consequential damages are those "'within the contemplation of, or reasonably foreseeable by, the parties at the time *the contract* was made.'" *Id.* (citations omitted) (emphasis added). In analogizing cases allowing attorneys' fees in first-party insurance claims to *Berube*, the *Heslop* court also discussed that "[t]erminated employees, like injured insurance claimants, find themselves in a particularly vulnerable position once the employer *breaches the employment agreement*." *Id*. (emphasis added).  Finally, the court found that "[e]mployers can reasonably foresee that wrongfully terminated employees will be forced to file suit to enforce their *employment contracts* and will foreseeably incur attorney fees." *Id.* at 840-41 (emphasis added). The *Heslop* court's specific language referencing an employment contract or agreement does not indicate to this court that the analysis was meant to apply to the plaintiff's public policy tort claim.

In *Peterson*, decided just a year before *Heslop*, the Utah Supreme Court divided over whether the violation of public policy cause of action should sound in tort or contract and part of the debate focused on the available remedies under each type of action. *See Peterson*, 832 P.2d at 1285 (Durham & Stewart, J.J., Howe, J., concurring); *id.* at 1290-91 (Zimmerman, J., & Hall, C.J., concurring and dissenting). The majority believed that a plaintiff should be entitled to tort damages including punitive damages, whereas the dissent believed consequential damages under a contract cause of action was sufficient. *Id.* Given the debate over available remedies in *Peterson*, this court concludes that the *Heslop* court's discussion of consequential damages can only be read to apply to the plaintiff's implied employment contract claim.

This court is not willing to extend the attorneys' fees exception recognized in *Heslop* to a public policy tort claim without a clearer holding by the Utah Supreme Court. Plaintiff's remedies are tort remedies, and this court sent the issue of punitive damages to the jury. The jury in this case, in its discretion, determined not to award punitive damages. In *Debry & Hilton Travel Services Inc. v. Capitol Int'l Airways, Inc.*, 583 P.2d 1181 (Utah 1978), the court denied attorneys' fees where the plaintiff was denied an award of punitive damages. *Id.* at 1185 (relying in part on *Dahl v. Prince*, 230 P.2d 328 (1951) (reversing an award of attorneys' fees where there was no basis for an award of punitive damages). The court concludes that there is no legal basis under Utah law for awarding Plaintiff attorneys' fees on his public policy tort claim.[1] Accordingly, the court grants Defendant's Motion to Disallow Attorneys' Fees.

## CONCLUSION

Based on the above reasoning, Defendant's Motion to Disallow Attorneys' Fees is GRANTED.

DATED this 21st day of August, 2008.

*/s/ Dale A. Kimball*
DALE A. KIMBALL
United States District Judge

---

[1] The parties appear to agree that this issue is governed by state law. To the extent that this court has any inherent powers to award attorneys' fees under federal law, those powers are limited to cases involving bad faith conduct during the litigation. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 54 & n.16 (1991). No such bad faith occurred or is alleged to have occurred in this case.